**E-FILED**
Monday, 30 March, 2015  11:56:08 AM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION**

| | | |
|---|---|---|
| STUART A. NUSSBAUM | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.:  15-cv-1128 |
| v. | ) | |
| | ) | Jury Demand |
| SMITH & NEPHEW, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

NOW COMES the Plaintiff, STUART A. NUSSBAUM (hereinafter "Plaintiff"), by and through his attorneys, STRONG LAW OFFICES, and complaining of the Defendant, SMITH & NEPHEW, INC., (hereinafter "Defendant"), alleges as follows:

### JURISDICTION AND VENUE

1.      That at all relevant and material times herein, the Plaintiff resided at 1925 Primrose Street in Pekin, Illinois 61554, and was a citizen of the State of Illinois.

2.      That at all relevant and material times herein, the Defendant, SMITH & NEPHEW, INC., was a corporation organized and existing under the laws of the State of Delaware, and having its principal place of business located in Memphis, Tennessee.  The Defendant, SMITH & NEPHEW, INC., designed, manufactured, marketed, promoted, sold, and/or distributed the Birmingham Hip Resurfacing System ("BHR") that is a subject of this lawsuit.

3.      That at all relevant and material times herein, the Defendant, individually, and by and through its representatives, agents, employees, joint ventures, and/or alter egos of the Defendant, was acting within the scope of its authority as such in doing the things alleged hereinafter.

4.      That the Defendant, individually, and by and through its representatives, agents, employees, joint ventures, and/or alter egos of the Defendant, was an instrumentality and/or conduit in the prosecution of a single venture, namely the design, manufacture, marketing, promotion, sales, and/or distribution of the BHR System and its component parts.

5.      That this Court is vested with Federal diversity jurisdiction pursuant to 28 U.S.C. § 1332 because the Plaintiff is a citizen of the State of Illinois, whereas the Defendant is a citizen of the State of Delaware, and has its principal place of business in the State of Tennessee, and because the matter in controversy exceeds $75,000 exclusive of interests and costs.

6.      General jurisdiction over the Defendant is proper because it conducts business in the State of Illinois in that it regularly sells, markets, and distributes its products to hospitals, medical centers, physicians and surgeons, and other end-users in the State of Illinois.

7.      In the alternative to general jurisdiction, specific jurisdiction over the Defendants exists because the particular defective BHR System surgical hip implant was sold and distributed to Pekin Hospital of Pekin, Illinois and/or Pekin Orthopedic Center of ProHealth Medical Group, Inc. of Pekin, Illinois.

8.      That venue in this district is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events on which this claim is based occurred in this District where the Defendants are subject to personal jurisdiction in accordance with 28 U.S.C. § 1391(b).

## NATURE OF THE CASE

9.      This is an action for product liability on behalf of the Plaintiff and against the Defendant who is responsible for the defective BHR hip replacement system implanted in the Plaintiff and that directly and proximately caused him significant pain, loosening and displacement of the prosthetic joint, metallosis, and difficulties in the right hip resulting in revision surgery of the left total hip arthroplasty.

## FACTUAL ALLEGATIONS

10.     This is an action seeking compensation for personal injuries caused by the Defendant's violations of Illinois common law.

11.     The Plaintiff seeks equitable and monetary relief, including compensatory damages, pecuniary damages, and all other appropriate relief to which he is entitled under Federal and State law.

12.     That on or about January 24, 2012, the Plaintiff underwent a left total hip arthroplasty by Dr. Donald A. Mitzelfelt, M.D. at Pekin Hospital in Pekin, Illinois.

13.     That the Plaintiff was the recipient of a BHR System and/or its components.

14.     That since 2006, the Defendant has manufactured and introduced or delivered for introduction into interstate commerce the BHR System.

15.     The hip joint is where the femur connects to the pelvis, and the hip joint is made up of the femoral head (a ball-like structure at the top of the femur) that rotates within the acetabulum (a cup-like structure at the bottom of the pelvis).

16.     In a healthy hip, both the femur and the acetabulum are strong and the rotation of the bones against each other is cushioned and lubricated by cartilage and bodily fluids. Over time,

these natural components age and wear down to the point where there is "bone-on-bone" rubbing which causes pain and immobility.

17.      A total hip replacement removes the body's natural joint components and replaces them with artificial ones which are typically made out of metal, ceramic, or plastic components.

18.      During the total hip replacement procedure, a surgeon hollows out the patient's femur bone, and the femoral stem is implanted into the hollow space in the femur.

19.      The liner and acetabular shell are fitted into the cup-like structure at the bottom of the pelvis, and the artificial femoral head (the ball-like structure) is then fitted into the liner and acetabular shell forming the new hip joint.

20.      The BHR System is a metal-on-metal hip resurfacing prosthesis.  It is comprised of two components; (i) a stemmed femoral head; and (ii) a hemispherical acetabular cup.

21.      As required by law, before commercially distributing the BHR System in the United States, the Defendant submitted an application for premarket approval ("PMA") of the device to the Secretary of Health and Human Services and, on May 9, 2006, the Food and Drug Administration ("FDA") completed its review of the Defendant's PMA application for the BHR System.  Based on the materials submitted by Smith & Nephew, the FDA conditionally approved the BHR System for commercial distribution.

22.      The conditional approval letter from the FDA stated that "commercial distribution of a device that is not in compliance with these conditions is a violation of the [Food, Drug and Cosmetic] Act, [21 U.S.C. §§ 301 *et seq*.]."

23.      That on January 24, 2012, the Plaintiff underwent a left total hip arthoplasty at Pekin Hospital in Pekin, Illinois.  That Dr. Donald A. Mitzefelt, M.D. performed the procedure.  That the BHR components used by Dr. Mitzefelt, and that were designed, manufactured, and

introduced or delivered into interstate commerce by the Defendant were a size 54 acetabular cup (catalog# 74122154; lot# 11FW33193), a size 48 femoral head (catalog# 74122548; lot#08LW20092), and a size 7 anthology stem (catalog# 71356007; lot# 11AM13871).

24.     The Defendant's BHR System suffers from a design and/or manufacturing defect that causes excessive amounts of cobalt and chromium to wear and corrode at the modular neck junction.  These cobalt and chromium shavings, debris and fragments prompt the human body to react by rejecting the implant.  This rejection of the implant manifests with symptoms including pain, loosening, dislocation, instability at the implant site, and squeaking and popping sounds.

25.     Inside the body at the hip joint, the metal reaction often causes fluids to accumulate, tissue swelling, and tissue and bone death.

26.     The design of the Defendant's BHR System was not sufficiently tested by the Defendant.

27.     That if the Defendant had conducted proper and adequate clinical trials of the BHR System, the Defendant would have discovered that the implant resulted in a high percentage of patients developing metallosis (a severe adverse reaction to metal debris), biologic toxicity from the implant materials, and higher than usual failure rates of the hip implant due to the release of metal particles into the patients' surrounding tissue due to the rotation and rubbing on the metal-on-metal implant components.

28.     That implantation of the BHR System results in a near-immediate systemic release of high levels of toxic metals into every recipients' blood stream and tissue due to the rotation of the metal femoral head within the metal liner.

29.     That the formation of metallosis, infection, and inflammation causes severe pain, discomfort, death to the surrounding tissue, bone loss, and lack of mobility and loss of range of motion.

30.     That by the time that the Defendant sold and/or distributed the BHR System to the Plaintiff's orthopaedic surgeon, Dr. Donald A. Mitzelfelt, M.D., the Defendant was aware of numerous adverse events being reported associated with the BHR System, and consequently, the Defendant was fully aware that the BHR System was defective and that numerous patients had already been injured by that defect.

31.     That based upon that information, the Defendant should have recalled the BHR System before it was sold to the Plaintiff, or at a minimum, the Defendant should have stopped selling and promoting the defective implant when they became aware that the implant had failed in numerous patients.

32.     That despite the Defendant's knowledge that the BHR System had a defect, and that it was prone to higher than normal failure rates thereby causing patients to undergo additional surgeries, the Defendant continued to manufacture, sell, promote, and distribute the defective BHR System.  In so doing, the Defendant actively concealed the known defect(s) from doctors and patients, including the Plaintiff and the Plaintiff's doctor(s).  Further, that the Defendant misrepresented that the BHR System was a safe and effective medical device.

33.     That at all relevant and material times herein, the Defendant continued to manufacture, sell, promote, and distribute the defective BHR System despite the Defendant's full knowledge that the implant was defective and harmful to patients, including the Plaintiff.

34.     That as a direct and proximate result of the defective design, manufacture, and composition of the BHR System, and its accompanying warnings and instructions (or lack thereof),

the Plaintiff's left hip failed, causing him severe pain, loosening and displacement of the impant, metallosis, and necrosis of the tissue at the implant site resulting in revision surgery and significant economic loss by the Plaintiff.

35.    That as a direct and proximate result of the failure of his defective BHR System, and of the Defendant's negligent and/or wrongful acts and/or omissions, the Plaintiff sustained and continues to suffer economic damages, severe and possibly permanent pain and suffering, disabling injuries, and loss of normal life in an amount to be proven at trial, but which will far exceed the $75,000 jurisdictional minimum of this Court.

36.    That within a short time after receiving the BHR System, the Plaintiff began to experience pain and discomfort at the site of the implantation.

37.    That on August 11, 2014, x-ray studies of the Plaintiff's left hip revealed significant loosening of the Plaintiff's implant.

38.    That on November 19, 2014 the Plaintiff underwent a revision surgery on the left hip due to the loosening and failure of the Plaintiff's BHR System at Pekin Hospital in Pekin, Illinois by Dr. Donald Mitzelfelt, M.D. wherein the Plaintiff's BHR System was removed and replaced.

### EQUITABLE TOLLING OF APPLICABLE STATUTE OF LIMITATIONS

39.    That the applicable statute of limitations period for the Plaintiff's claim(s) has not expired, however, the running of any applicable statute of limitations has been tolled by reason of the Defendant's conduct.  The affirmative acts and/or omissions by the Defendant actively misrepresented and/or concealed the defects and risks associated with the BHR System from the Plaintiff and the Plaintiff's physicians and surgeons.

40.     That as a direct and proximate result of the Defendant's acts and/or omissions the Plaintiff and his physicians and surgeons were unaware, and could not reasonably know or learn through reasonable diligence that the Plaintiff had been exposed to the risks alleged herein and that those risks were the direct and proximate result of the Defendant's acts and/or omissions.

41.     That furthermore, the Defendant is estopped from relying on any statute of limitations because of its misrepresentation and/or concealment of the true character, quality, and nature of the BHR System.  The Defendant was under a duty to disclose the true character, quality, and nature of the BHR System because this was non-public information that the Defendant had and continues to have exclusive control over, and because the Defendant knew that this information was not available to the Plaintiff, and the Plaintiff's surgeon and physicians.

42.     That the Defendant had the ability to and did spend enormous amounts of money in furtherance of their purpose, and marketing and promoting a profitable medical device, notwithstanding the known or reasonably known risks.  That the Plaintiff and the Plaintiff's surgeon and physicians could not have afforded and could not have possibly conducted studies to determine the nature, extent, and identity of health related risks, and were forced to rely on the Defendant's representations.

## COUNT I
### (Strict Product Liability)

1-42.     That the Plaintiff repeats and realleges, and incorporates by reference, the preceding paragraphs, 1 through 42, of this Complaint as and for paragraphs 1 through 42 of this Count I with full force and effect as if pleaded here in full.

43.     That the Defendant is the manufacturer, designer, distributor, seller, and/or supplier of orthopedic devices, orthopedic surgical implants, and medical devices including, but not limited to, the BHR System.

44.    That the BHR System that was manufactured, designed, sold, supplied, and/or placed into the stream of commerce by the Defendant was defective in its manufacture and/or construction when it left the hands of the Defendant in that it deviated from product specifications and/or applicable federal requirements for these types of medical devices, and posed a serious risk of injury and/or death to end-users and consumers.

45.    That at all relevant and material times, and at the time that the BHR System left the control of the Defendant, said implant was defective and/or unreasonably dangerous in one or more of the following respects:

a.    The design, sale, manufacture and/or distribution of the BHR System produced an unsafe product for such use that could have been reasonably foreseeable and expected to be made of it by the ultimate user and/or consumer, including the Plaintiff, and that said dangers and/or hazards existed at the time it left the control of the Defendant;

b.    The BHR System was not reasonably safe as it was intended to be used;

c.    The BHR System had an inadequate design for the purposes of implantation as a hip replacement prosthesis;

d.    The BHR System contained unreasonably dangerous design defects, including, but not limited to, inherently unstable and defective design and construction materials that resulted in an unreasonably high probability of and rate of early failure and/or injury;

e.    That the BHR System had inadequate product warnings and/or product instruction for the ultimate user and/or consumer including the Plaintiff, that included, but was not limited to, the risk of mechanical failure, fretting, and corrosion at the device's neck, stem, head, and ball and cup junctions;

f.    That the design of the BHR System places the metal femoral head in direct contact with the metal acetabular cup which produced greater than normal metal-on-metal wear, corrosion, and metal debris;

g.     That the design of the BHR System is inherently unstable and defective, and its sale, distribution, and manufacture produced and/or resulted in a hip prosthesis where the danger and health risks in its design exceed the benefits of the medical device when the product was put to a use that was reasonably foreseeable considering the nature and function of the product;

h.     That the BHR System failed to perform in the manner reasonably expected in light of its nature, and intended and foreseeable functions and uses;

i.     That the BHR System has a propensity for the acetabular cup to detach, disconnect, and/or loosen from the acetabulum, and a propensity to result in high levels of metal debris due to normal use of the implant within the patient's tissue and blood stream, including the Plaintiff's; and

j.     That the BHR System was insufficiently tested.

46.     That as a direct and proximate result of one or more of the above violations, the Plaintiff's BHR System had mechanical failures, including, but not limited to, loosening and displacement, excessive corrosion, fretting, and excessive wear and metal debris.

47.     That the Plaintiff was forced to undergo numerous medical treatments, and a revision surgery to correct the aforesaid mechanical failures of his BHR System.

48.     That as a direct and proximate result of the Plaintiff's use of the BHR System as manufactured, designed, sold, supplied, and/or placed into the stream of commerce by the Defendant and/or the Defendant's failure to comply with federal requirements for these types of medical devices, the Plaintiff suffered serious physical injury, pain and suffering, and damages and economic loss, and will continue to so suffer in the future.

49.     That as a direct and proximate result of the Plaintiff's use of the BHR System as manufactured, designed, sold, supplied, and/or placed into the stream of commerce by the Defendant and/or the Defendant's failure to comply with federal requirements for these types of medical devices, the Plaintiff was and will in the future be hindered and prevented in whole or in

part from attending to his usual duties and affairs, has lost and in the future will lose the value of that time, and has suffered a loss of earning capacity as aforementioned.

50.     That the Plaintiff has suffered severe damage of a personal and pecuniary nature because of these failures, and has expended and become liable for and will in the future become liable for large sums of money for medical care and services endeavoring to become healed and cured of said injuries.

WHEREFORE, the Plaintiff demands judgment against the Defendant in an amount in excess of the jurisdictional limitations of this Court, plus all the costs allowed by law.

## <u>COUNT II</u>
### (Negligent Product Liability)

1-42.     That the Plaintiff repeats and realleges, and incorporates by reference, the preceding paragraphs, 1 through 42, of this Complaint as and for paragraphs 1 through 42 of this Count II with full force and effect as if pleaded here in full.

43.     That at all relevant and material times, the Defendant was engaged in or participated in the business of designing, constructing, testing, inspecting, assembling, preparing, manufacturing, advertising, distributing, supplying, and/or selling orthopedic implants and surgical devices, including the BHR System, and which the Defendant sold and/or distributed to Pekin Hospital and/or Pekin Orthopedic Center of ProHealth Medical Group, Inc. for ultimate use on members of the general public, including the Plaintiff.

44.     That at all relevant and material times, the Defendant owed the Plaintiff a duty to use reasonable care in the design, construction, testing, inspection, assembly, preparation, manufacture, advertising, distribution, supply, and/or sale of the BHR System.

45.     That at all relevant and material times, the Defendant breached that duty owing to the Plaintiff, and were negligent in one or more of the following ways:

a.      Designed, manufactured, distributed, constructed, supplied, and/or sold the BHR System with defects in its design and/or manufacture which unreasonably increased the risk of injury to those persons using it, including the Plaintiff;

b.      Failed to design and/or manufacture the BHR System in a reasonably safe condition for the purposes and foreseeable uses in which it was intended;

c.      Failed to exercise reasonable care to warn the users of the BHR System of its dangerous condition(s);

d.      Failed to adequately and properly warn ultimate users of the BHR System, including the Plaintiff, of the risks of severe injuries when used in the manner for which it was intended;

e.      Failed to adequately and properly test and inspect the BHR System to ascertain the danger(s) associated with the product including, but not limited to, mechanical failure;

f.      Failed to utilize and/or implement a feasible alternative design that was available to the Defendant at the time of manufacturing that would have made the product reasonably safe;

g.      Designed, manufactured, distributed, constructed, supplied, and/or sold the BHR System with an acetabular component that was susceptible to excessive metal-on-metal wear and corrosion and therefore was unreasonably dangerous to the user of the product, including the Plaintiff;

h.      Designed, manufactured, distributed, constructed, supplied, and/or sold the BHR System with an acetabular component that was insufficient to allow proper and adequate movement of the femoral component within the joint without causing excessive fretting and corrosion of the components;

i.      Designed, manufactured, distributed, constructed, supplied, and/or sold the BHR System with an acetabular component that was insufficient in that it was subject to excessive corrosion and wear at the junction of the femoral head and liner due to the rotation of the component;

j.      Designed, manufactured, distributed, constructed, supplied, and/or sold the BHR System with an unacceptable differential hardness of the cup and femoral head;

k.      Designed, manufactured, distributed, constructed, supplied, and/or sold the BHR System using inferior heat treatment methods and/or inferior metals;

l.      Negligently released the BHR System into the stream of commerce; and

m.      Otherwise breached their duties of care by negligently designing, manufacturing, distributing, supplying, and/or selling the BHR System.

46.      That as a direct and proximate result of one or more of the above violations, the Plaintiff's BHR System had mechanical failures that required revision surgery.

47.      That as a direct and proximate result of one or more of the above violations, the Plaintiff's BHR System released toxic metals, including cobalt-chromium into his blood stream, tissue, and bone surrounding the implant.

48.      That the Plaintiff was forced to undergo numerous medical treatments and may still require additional future medical treatment and surgeries to correct these failures and conditions, and injuries.

49.      That additionally, these treatments have caused the Plaintiff to suffer severe pain, limited range of motion in his hip, and that the Plaintiff was and will in the future be hindered and prevented in whole or in part from attending to his usual duties and affairs, has lost and in the future will lose the value of that time, and has suffered a loss of earning capacity as aforementioned.

50.      That the Plaintiff also suffered great pain and anguish both in mind and body, and will in the future continue to so suffer.

51.      That the Plaintiff has suffered severe damage of a personal and pecuniary nature because of these failures, and has expended and become liable for and will in the future become liable for large sums of money for medical care and services endeavoring to become healed and cured of said injuries.

WHEREFORE, the Plaintiff demands judgment against the Defendant in an amount in excess of the jurisdictional limitations of this Court, plus all the costs allowed by law.

**COUNT III**
**(Breach of Implied Warranty)**

1-42.    That the Plaintiff repeats and realleges, and incorporates by reference, the preceding paragraphs, 1 through 42, of this Complaint as and for paragraphs 1 through 42 of this Count III with full force and effect as if pleaded here in full.

43.    That at all material times, there was in full force and effect in the State of Illinois a statute, 810 ILCS 2-314, establishing an implied warranty of merchantability for goods, unless excluded or modified, if the seller is a merchant with respect to goods of that kind.

44.    That at all material times herein, the Defendant was a merchant with respect to the BHR System, and goods of the kind.

45.    That at all material times herein, the Defendant breached its implied warranty of merchantability due to the mechanical failure in one or more of the following ways:

   a.    The good failed to pass without objection in the trade under the contract description;

   b.    The good failed to be fit for ordinary purposes for which such goods are used; and

   c.    The good failed to conform to the promise or affirmation of fact made on the container or label, if any.

46.    That as a direct and proximate result of the Defendant's breach of warranty, the Plaintiff had a mechanical failure of his BHR System and suffered severe damages of a personal and pecuniary nature.

WHEREFORE, the Plaintiff demands judgment against the Defendant in an amount in excess of the jurisdictional limitations of this Court, plus all the costs allowed by law.

## COUNT IV
### (Breach of Express Warranty)

1-42.   That the Plaintiff repeats and realleges, and incorporates by reference, the preceding paragraphs, 1 through 42, of this Complaint as and for paragraphs 1 through 42 of this Count IV with full force and effect as if pleaded here in full.

43.   That at all relevant and material times, the Defendant expressly warranted that the BHR System was a safe and effective orthopedic device for those patients requiring total hip replacement, including the Plaintiff.

44.   That the BHR System manufactured, designed, sold, and/or distributed by the Defendant did not conform to these express representations because the device caused serious injury to the Plaintiff due to its mechanical failures when used as recommended and directed by the Defendant.

45.   That as a direct and proximate result of the Defendant's breach of express warranty, the Plaintiff suffered serious physical injury, harm, emotional distress, damages and economic loss, including revision surgery, and will continue to suffer such harm, damages, and economic loss in the future.

WHEREFORE, the Plaintiff demands judgment against the Defendant in an amount in excess of the jurisdictional limitations of this Court, plus all the costs allowed by law.

<u>**COUNT V**</u>
**(Strict Products Liability Based Upon Violations of**
**21 C.F.R. 820.30(f), 21 C.F.R. 820.30(g), 21 C.F.R. 820.30(c), 21 C.F.R. 820.30(d),**
**21 C.F.R. 820.100, 21 C.F.R. 820.198, and 21 C.F.R. 803.3)**

1-42.    That the Plaintiff repeats and realleges, and incorporates by reference, the preceding paragraphs, 1 through 42, of this Complaint as and for paragraphs 1 through 42 of this Count V with full force and effect as if pleaded here in full.

43.    The BHR System, including the acetabular cup and femoral head implanted into the Plaintiff's left hip on January 24, 2012, was designed and/manufactured in violation of the Federal Food, Drug and Cosmetic Act ("the Act") and regulations promulgated pursuant to it.

44.    That at the time the BHR System, including the acetabular cup and femoral head implanted into the Plaintiff's left hip on January 24, 2012, left the control of the Defendant it was unreasonably dangerous due to non-compliance by the Defendant with the Act, and the regulations promulgated pursuant to it in one or more of the following ways:

  a.    Failed to accurately establish the in vivo life expectancy of the BHR System, in violation of 21 C.F.R. 820.30(f);

  b.    Failed to validate the anticipated wear of the acetabular cup prior to its release into commercial distribution, in violation of 21 C.F.R. 820.30(g);

  c.    Failed to establish and maintain appropriate reliability assurance testing to validate the BHR System design both before and after its entry into the marketplace, in violation of 21 C.F.R. 820.30(g);

  d.    Failed to conduct adequate bio-compatibility studies to determine the BHR System's latent propensity to effuse metallic contaminants into the human blood and tissue;

  e.    Failed to identify the component discrepancy, in violation of 21 C.F.R. 820.80(c);

  f.    Failed to capture the component discrepancy, in violation of 21 C.F.R. 820.80(c);

g.  Failed to capture the component(s) discrepancy(ies) or defect(s) during their Final Acceptance Activities, in violation of 21 C.F.R. 820.80(d);

h.  Failed to establish and maintain procedures for implementing corrective and preventative action in response to, *inter alia*, complaints regarding the BHR System, returned BHR Systems, and other quality problems associated with the BHR System, in violation of 21 C.F.R. 820.100;

i.  Failed to appropriately respond to adverse incident reports that strongly indicated the acetabular component was malfunctioning (as defined in 21 C.F.R. 803.3), or otherwise not responding to its Design Objective Intent, in violation of 21 C.F.R. 820.198;

j.  Failed to correct the component discrepancy, in violation of 21 C.F.R. 820.80(c);

k.  Failed to conduct complete device investigations on returned BHR Systems and components, including the acetabular and femoral component, in violation of 21 C.F.R. 820.198; and/or

l.  Continued to inject, direct, and/or place the BHR System into the stream of interstate commerce when the Defendant knew, or should have reasonably known that the acetabular and/or femoral component was malfunctioning ((as defined in 21 C.F.R. 803.3), or otherwise not responding to its Design Objective Intent, in violation of 21 C.F.R. 820.198.

45.  That as a direct and proximate result of the Defendant's violations of one or more of these Federal statutory and regulatory standards of case, a BHR System, including the acetabular cup and femoral head, were implanted in the Plaintiff, and he was caused to endure serious injury, as defined in 21 C.F.R. 803.3.  Further, that the Plaintiff was caused to suffer, and will suffer in the future, injuries including, but not limited to, pain, suffering, lost wages, disability, disfigurement, legal obligations for hospital, medical, nursing, rehabilitative, and other medical services and treatment.  Further, that all of these injuries are permanent.

46.  That this cause of action is based entirely on the contention that the Defendant has violated Federal safety statutes and regulations.  That the Plaintiff does not bring the underlying

action as an implied statutory cause of action, but rather, he is pursing parallel state common law claims based upon the Defendant's violations of the applicable Federal regulations.

47.     That under Illinois law, the Defendant's violations of the aforementioned Federal statutes and regulations establish a *prima facie* case of strict liability in tort.  *See* <u>Anderson v. Hyster Company</u>, 74 Ill.2d 364, 368, 385 N.E.2d 690 (1979) (proof a product is "unreasonably dangerous" may come from legislation or government regulation); *see also* <u>Baier v. Bostitch</u>, 243 Ill.App.3d 195, 207-08, 611 N.E.2d 1103 (1st Dist. 1993) (allowing OSHA standard to help define "unreasonably dangerous"); *see also* <u>Byrne v. SCM Corp.</u>, 182 Ill.App.3d 523, 551-52 (4th Dist. 1989) (approving use of modified IPI 60.01, allowing the jury to consider whether the defendant violated a statute on the occasion in question "in determining whether or not the product was unreasonably dangerous at the time of the occurrence.").

48.     Thus under Illinois common law, a money damages remedy exists for violation of the Act and regulations promulgated thereunder which results in an unreasonably dangerous product proximately causing injuries, and there is no need for the Illinois Legislature to act in order to create such a remedy.

49.     The Act contains an express preemption provision, 21 U.S.C. § 360k, that states in relevant part, "no State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement – (1) which is different from, or in addition to, any requirement applicable under this Act to the device, and (2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this Act."

50.     That the cause of action set forth in this Court is not preempted by 21 U.S.C. § 360k because the violations alleged are all based on an exclusively Federal statutory and regulatory set

of requirements that include no "requirement which is different from, or in addition to, any requirement applicable under" the Act and regulations promulgated thereunder.  *See* <u>Bausch v. Stryker</u>, 630 F.3d 546, 556 (7th Cir. 2010) (claims for negligence and strict products liability relating to a Class III medical device were not expressly preempted by Federal law to the extent they were based on the defendants' violations of Federal law).  As such, the claims set forth in this Count and cause of action contain requirements that are parallel to the Act and the regulations promulgated thereunder.

WHEREFORE, the Plaintiff demands judgment against the Defendant in an amount in excess of the jurisdictional limitations of this Court, plus all the costs allowed by law.

### COUNT VI
**(Negligence Based Based Upon Violations of**
**21 C.F.R. 820.30(f), 21 C.F.R. 820.30(g), 21 C.F.R. 820.30(c), 21 C.F.R. 820.30(d),**
**21 C.F.R. 820.100, 21 C.F.R. 820.198, and 21 C.F.R. 803.3)**

1-42.    That the Plaintiff repeats and realleges, and incorporates by reference, the preceding paragraphs, 1 through 42, of this Complaint as and for paragraphs 1 through 42 of this Count VI with full force and effect as if pleaded here in full.

43.    The BHR System, including the acetabular cup and femoral head implanted into the Plaintiff's left hip on January 24, 2012, was designed and/manufactured in violation of the Federal Food, Drug and Cosmetic Act ("the Act") and regulations promulgated pursuant to it.

44.    That it was the duty of the Defendant to comply with the Act, and the regulations promulgated pursuant to it, yet, notwithstanding this duty, the Defendant violated the Act in one or more of the following ways:

      a.    Failed to accurately establish the in vivo life expectancy of the BHR System, in violation of 21 C.F.R. 820.30(f);

      b.    Failed to validate the anticipated wear of the acetabular cup prior to its release into commercial distribution, in violation of 21 C.F.R. 820.30(g);

c.      Failed to establish and maintain appropriate reliability assurance testing to validate the BHR System design both before and after its entry into the marketplace, in violation of 21 C.F.R. 820.30(g);

d.      Failed to conduct adequate bio-compatibility studies to determine the BHR System's latent propensity to effuse metallic contaminants into the human blood and tissue;

e.      Failed to identify the component discrepancy, in violation of 21 C.F.R. 820.80(c);

f.      Failed to capture the component discrepancy, in violation of 21 C.F.R. 820.80(c);

g.      Failed to capture the component(s) discrepancy(ies) or defect(s) during their Final Acceptance Activities, in violation of 21 C.F.R. 820.80(d);

h.      Failed to establish and maintain procedures for implementing corrective and preventative action in response to, *inter alia*, complaints regarding the BHR System, returned BHR Systems, and other quality problems associated with the BHR System, in violation of 21 C.F.R. 820.100;

i.      Failed to appropriately respond to adverse incident reports that strongly indicated the acetabular component was malfunctioning (as defined in 21 C.F.R. 803.3), or otherwise not responding to its Design Objective Intent, in violation of 21 C.F.R. 820.198;

j.      Failed to correct the component discrepancy, in violation of 21 C.F.R. 820.80(c);

k.      Failed to conduct complete device investigations on returned BHR Systems and components, including the acetabular and femoral component, in violation of 21 C.F.R. 820.198; and/or

l.      Continued to inject, direct, and/or place the BHR System into the stream of interstate commerce when the Defendant knew, or should have reasonably known, that the acetabular and/or femoral component was malfunctioning ((as defined in 21 C.F.R. 803.3), or otherwise not responding to its Design Objective Intent, in violation of 21 C.F.R. 820.198.

45.     That as a direct and proximate result of the Defendant's violations of one or more

of these Federal statutory and regulatory standards of case, a BHR System, including the acetabular

cup and femoral head, were implanted in the Plaintiff, and he was caused to endure serious injury,

as defined in 21 C.F.R. 803.3.  Further, that the Plaintiff was caused to suffer, and will suffer in the future, injuries including, but not limited to, pain, suffering, lost wages, disability, disfigurement, legal obligations for hospital, medical, nursing, rehabilitative, and other medical services and treatment.  Further, that all of these injuries are permanent.

46.     That this cause of action is based entirely on the contention that the Defendant has violated Federal safety statutes and regulations.  That the Plaintiff does not bring the underlying action as an implied statutory cause of action, but rather, he is pursing parallel state common law claims based upon the Defendant's violations of the applicable Federal regulations.

47.     Under Illinois law, the Defendant's violations of the aforementioned Federal statutes and regulations establish a *prima facie* case of common law negligence.  *See* <u>Kalata v. Anheuser-Busch Companies, Inc.</u>, 144 Ill.2d 425, 434, 581 N.E.2d 656, 661 (1991) (noting that "a violations of a statute or ordinance designed to protect human life or property is *prima facie* evidence of negligence.").  Further, that the Illinois Supreme Court has described an Illinois negligence cause of action like this one based solely on statutory violations, as "identical" to a "private cause of action under the Act…[which] operates exactly as would a private cause of action."  *See* <u>Abbasi v. Paraskevoulakos</u>, 187 Ill.2d 386, 393-95, 718 N.E.2d 181 (1999).

48.     Thus, under Illinois common law, a money damages remedy exists for negligent violation of the Act and regulations promulgated thereunder which proximately causes injuries, and there is no need for the Illinois Legislature to act in order to create such a remedy.

49.     The Act contains an express preemption provision, 21 U.S.C. § 360k, that states in relevant part, "no State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement – (1) which is different from, or in addition to, any requirement applicable under this Act to the device, and (2) which relates to the

safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this Act."

50.     That the cause of action set forth in this Court is not preempted by 21 U.S.C. § 360k because the violations alleged are all based on an exclusively Federal statutory and regulatory set of requirements that include no "requirement which is different from, or in addition to, any requirement applicable under" the Act and regulations promulgated thereunder.  *See* <u>Bausch v. Stryker</u>, 630 F.3d 546, 556 (7th Cir. 2010) (claims for negligence and strict products liability relating to a Class III medical device were not expressly preempted by Federal law to the extent they were based on the defendants' violations of Federal law).  As such, the claims set forth in this Count and cause of action contain requirements that are parallel to the Act and the regulations promulgated thereunder.

WHEREFORE, the Plaintiff demands judgment against the Defendant in an amount in excess of the jurisdictional limitations of this Court, plus all the costs allowed by law.

## PLAINTIFF DEMANDS TRIAL BY JURY

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Plaintiff demands trial by jury in this action.

Respectfully submitted,
STUART A. NUSSBAUM


By:    /s/ Jason B. McGary_____
One of the Attorneys for Plaintiff


Jason B. McGary ARDC # 6288405
Strong Law Offices
3100 N. Knoxville Avenue
Peoria, Illinois 61603
(309) 688-5297
Fax: (309) 688-5340
jason@stronglawoffices.com